UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE MOBILE TECHNOLOGIES, LLC, <br><br>　　　　　　　Plaintiff/Counter-defendant, <br><br>　v. <br><br>FLYWHEEL SOFTWARE, INC., <br><br>　　　　　　　Defendant/Counterclaimant. | Case No. 16-cv-02560-SI <br><br> **ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS** <br><br>Re: Dkt. No. 29 |

Plaintiff and counter-defendant Creative Mobile Technologies, LLC ("CMT") has brought a motion to dismiss the counterclaims of defendant and counterclaimant Flywheel Software, Inc. ("Flywheel"). Dkt. No. 29. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing set for October 14, 2016. For the reasons set forth below, the Court GRANTS plaintiff's motion to dismiss the counterclaims, with leave to amend.

**BACKGROUND**

**I.　Allegations Leading to Original Complaint**

According to plaintiff CMT's complaint, between 2011 and 2013, the San Francisco Mass Transit Authority began requiring that San Francisco taxi fleets "install backseat credit card payment terminals and PIMs [passenger information monitors] accessible to the blind in all taxicabs." Dkt. 1, Compl. ¶ 8. CMT alleges that those regulations required taxi fleet operators "to retain third party payment service providers (like CMT) to handle all aspects of electronic payment transactions and trip data collection and reporting." *Id.* CMT designed and developed technology to comply with these regulations, "and then contracted with numerous taxi fleets

nationwide . . . to install the CMT Hardware in their taxicabs." *Id.* ¶ 9. Under the contracts, CMT would purchase and install CMT Hardware at no upfront cost to the taxi fleet partners, for use by their taxicab drivers. *Id.* ¶ 9. In exchange, the taxi fleet partners agreed "to process all electronic passenger payments exclusively through CMT's payment processor throughout the duration of the contract." *Id.* CMT would collect a processing fee for those transactions "[i]n most cases." *Id.* CMT alleges the contract terms range from five to ten years in duration and that all contacts are currently active. *Id.* ¶ 10.

Defendant Flywheel is a software company that developed a mobile "e-hailing" application for smartphones. *Id.* ¶¶ 14-15. Prospective passengers and taxi drivers download the application and then use it to connect with each other to arrange a pick-up. *Id.* ¶ 15. To set up an account through the application, prospective passengers enter their debit or credit card information. *Id.* At the end of the ride, Flywheel sends that information to a credit card processing service or merchant services provider for processing. *Id.* The complaint alleges that Flywheel charges taxi drivers a user fee and that Flywheel "was marketing its e-hail application directly to members of its San Francisco Taxi Fleet Partners, who could download and use the application on their personal smartphones while circumventing the appropriate, mandated use of CMT Hardware during rides." *Id.* ¶ 16.

Upon discovery of Flywheel's alleged interference, CMT alleges sending Flywheel a cease and desist letter dated around October 7, 2014. *Id.* ¶ 18. Following negotiations, the parties entered into a contract on December 4, 2014. *Id.* ¶ 19.[1]

On May 11, 2016, CMT brought suit against Flywheel, claiming: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) inducing breach of contract; (4) intentional interference with contractual relations; and (5) violations of the California unfair competition law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

---

[1] The December 4, 2014 CMT-Flywheel contract is the basis for CMT's breach of contract and other claims. However, the two counterclaims at issue in this motion allege restraint of trade based on the underlying CMT-taxi fleet partner contracts. The details of the December 4, 2014 CMT-Flywheel contract, which are currently under seal, are not relevant to the present motion to dismiss the counterclaims.

### II. Allegations of Defendant's Counterclaim

Flywheel answered on June 20, 2016, and brought two counterclaims for unlawful restraint of trade and unfair competition. Dkt. No. 16, Answer & Counterclaim. In its counterclaim, Flywheel alleges that its mobile application provides taxi drivers with "a needed and valuable response to increased competition from mobile rider services such as Uber and Lyft." Counterclaim ¶ 4. Flywheel's application is used when a customer hails a cab through the platform. *Id.* ¶ 5. "Flywheel then processes the customer's order and arranges for a taxi to fulfill the customer's order." *Id.* "Payment for a Flywheel arranged ride is collected through Flywheel's platform." *Id.* Flywheel further pleads that it "has invested significant resources developing its platform and mobile application, advertising the Flywheel service to taxi customers, and developing a network of drivers who will efficiently fulfill orders received by Flywheel." *Id.*

Flywheel counterclaims for unlawful restraint of trade, arguing that CMT, by entering into written agreements with third party taxi fleet partners, is relying on unfair and unlawful business practices that effectively prevent mobile taxi hailing solutions. *Id.* ¶¶ 7, 9. Flywheel also claims unfair competition, alleging that:

> CMT has engaged and continues to engage in unlawful and unfair business practices, including (a) entering into the Restraining Agreements with Subject Taxi Companies that unlawfully and unfairly restrain competition, (b) coercing the Subject Taxi Companies to refuse to deal with Flywheel based on the Restraining Agreements, and (c) coercing Flywheel not to lawfully compete with it.

*Id.* ¶ 16. Flywheel claims that this conduct "seeks to unfairly and unlawfully restrain competition" and that "[t]he gravity of the harm to Flywheel and members of the public greatly outweighs the utility of the conduct to CMT." *Id.* ¶ 17.

CMT now moves to dismiss both counterclaims under FRCP 12(b)(6). Dkt. No. 29.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

In reviewing a Rule 12(b)(6) motion to dismiss a counterclaim, a district court must accept as true all facts alleged in the counterclaim, and draw all reasonable inferences in favor of the claimant. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Unlawful Restraint of Trade

Flywheel brings its first counterclaim based on "unlawful restraint of trade." Counterclaim ¶¶ 8-14. Flywheel does not state in its counterclaim or answer under what relevant law it bases this counterclaim. *See id.* In their briefs, both parties seem to take the position that the claim is brought under California's Cartwright Act, which codifies California's common law on unlawful restraints of trade. *See* Cal. Bus. & Prof. Code §§ 16700 *et seq.*; Dkt. No. 29, Mot. at 5-6; Dkt. No. 32, Oppo. at 1. But because Flywheel has not stated this expressly, the Court does not know whether there is also a claim under the federal Sherman Act. In its opposition, Flywheel cites to

the Sherman Act, but it is unclear whether Flywheel does so because it intends to bring its counterclaim under the Sherman Act or if it does so because courts look to Sherman Act case law in interpreting Cartwright Act claims. *See* Oppo. at 4; *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 n.2 (9th Cir. 1999) ("California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, is patterned after the Sherman Act. California courts look to federal case law interpreting the Sherman Act for guidance in interpreting the Cartwright Act."). At minimum, the Court finds that CMT should be notified of the basis for Flywheel's first counterclaim, and there is reason to dismiss the counterclaim on those grounds alone.

Turning to the sufficiency of Flywheel's allegations, the Court further finds that Flywheel's first counterclaim should be dismissed for failure to allege that CMT "has market power within a 'relevant market.'"[2] *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008). To do so, Flywheel "must allege both that a 'relevant market' exists and that [CMT] has power within that market." *See id.* Although the elements of the antitrust claim need not be pled with specificity, an antitrust claim will not survive a Rule 12(b)(6) motion to dismiss if "it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect" or if "the complaint's 'relevant market' definition is facially unsustainable." *Id.* at 1045.

At minimum, "[a]ntitrust law requires allegation of both a product market and a geographic market." *Id.* at 1045 n.4. Flywheel has done neither. Flywheel asserts, without citation, that "the existence of a specific relevant market is not required to state a Cartwright Act violation." Oppo. at 5. Flywheel then argues that it should at least be permitted "to amend its complaint to state the implicit allegation of a relevant market – namely, e-hailing mobile applications in the San Francisco, taxicab, or ride-hailing market." *Id.* Flywheel thus confusingly mixes product and geographic markets in its brief, and then goes on to state that it "may expand its claim to include"

---

[2] The Court notes that CMT argues, and Flywheel does not contest, that exclusive-dealing relationships are not per se unlawful restraints of trade. Mot. at 7 (citing *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 996 (9th Cir. 2010)); Oppo. at 5 (citing *Corwin v. Los Angeles Newspaper Service Bureau Inc.*, 4 Cal. 3d 842, 853 (1971)). Thus, both parties focus their arguments on whether the alleged restraint of trade is unreasonable.

other geographic markets in New York, Boston, Chicago, Philadelphia, and Houston. *See id.* at 6 n.2.

Additionally, Flywheel has failed to allege that CMT has power within the relevant market. *See* Counterclaim ¶¶ 8-14. Because Flywheel is silent on this, the Court cannot know whether the alleged market power is cognizable. If, however, the source of the market power is alleged to be the "Restraining Agreements" (i.e., contracts) that CMT entered into with taxi companies, these cannot constitute a market power for antitrust claims. The Ninth Circuit has held that "contractual obligations [are] not a cognizable source of market *power*." *Newcal*, 513 F.3d at 1047. Nor does a "contractually-created monopoly" serve as market power for Sherman Act purposes. *Id.* at 1050. For instance, in *Forsyth v. Humana, Inc.*, consumers of health insurance policies willingly entered into contracts explicitly granting defendant Humana the power to insure them only through certain hospitals. 114 F.3d 1467, 1476 (9th Cir. 1997). The Ninth Circuit concluded that the plaintiffs' antitrust claim failed because they "claimed a submarket whose boundaries depended entirely on a written contract." *See id.; Newcal*, 513 F.3d at 1047. In contrast, in *Newcal* the relevant market was a "wholly derivative aftermarket for replacement equipment" for photocopiers that resulted from an initial contractual relationship. 513 F.3d at 1050. Because that was "not a case in which the alleged market power flows from contractual exclusivity[,]" the court permitted the claim to survive a motion to dismiss. *Id.* Thus, if Flywheel means to allege that CMT has market power stemming from CMT's exclusivity contracts with taxi fleets, which the taxi fleets willingly entered into, Flywheel will not have alleged that CMT has market power for purposes of an antitrust claim.

Accordingly, the Court GRANTS CMT's motion to dismiss Flywheel's first counterclaim. Because the counterclaim could potentially be cured with the addition of the information outlined above, the Court gives Flywheel leave to amend.

## II.     Unfair Competition

Flywheel's brings its second counterclaim for "unfair competition." Counterclaim ¶¶ 15-19. Although Flywheel does not specify the source of law, both parties assume in their briefs that

6

1  the claim is based on California's unfair competition law ("UCL"), which prohibits "any unlawful,
2  unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Flywheel's claim
3  is based on the (1) "unlawful" and (2) "unfair" prongs. Oppo. at 7. The "unlawful" prong of the
4  UCL "borrows violations of other laws and treats them as unlawful practices that the unfair
5  competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles*
6  *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). However, under the "unfair" prong, "a practice
7  may be deemed unfair even if not specifically proscribed by some other law." *Id.* The word
8  "unfair" in the UCL "means conduct that threatens an incipient violation of an antitrust law, or
9  violates the policy or spirit of one of those laws because its effects are comparable to or the same
10 as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 186.
11 Additionally, one suing for relief under the UCL must allege that he "suffered injury in fact and
12 ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. Prof. Code
13 § 17204; *Kwikset Corp. v. Super. Court*, 51 Cal. 4th 310, 318 (2011).

### A.    Unlawful Prong

Here, both parties agree that Flywheel's counterclaim under the "unlawful" prong depends on proving there to be a violation of another law, specifically the antitrust law alleged in Flywheel's first counterclaim. Mot. at 11; Oppo. at 7; *see also Cel-Tech*, 20 Cal. 4th at 180. As such, Flywheel must sufficiently plead facts with respect to a Cartwright or Sherman Act antitrust violation in order to meet the unlawful prong of a UCL violation. Because Flywheel has not pled sufficient facts to survive a motion to dismiss with respect to its first counterclaim, it has not pled sufficient facts to meet the unlawful prong of its second counterclaim.

### B.    Unfair Prong

Under the "unfair" prong, CMT argues that conduct that is not found to be "unfair" under the Cartwright Act cannot be found to be "unfair" under the UCL. *See* Mot. at 11 (citing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)). CMT further cites language from *Cel-Tech* suggesting that a claimant cannot "plead around" antitrust law by using the UCL's "unfair"

prong. *See* Dkt. No. 33, Reply at 7 (citing *Cel-Tech*, 20 Cal. 4th at 182-83). Flywheel, on the other hand, argues that the UCL "allows a court maximum discretion to address improper business practices" because the court may find the "unfair" prong satisfied where conduct "violates the policy or spirit" of antitrust law. *See* Oppo. at 7 (citing *Cel-Tech*, 20 Cal. 4th at 187). According to Flywheel, CMT's "Restraining Agreements violate the policy and spirit of antitrust laws because they significantly threaten or harm competition." *Id.* Specifically, Flywheel points to CMT's Restraining Agreements that disrupt the business of taxi and e-hailing application companies against competition from Uber and Lyft. *See id.*

The Court finds that Flywheel's reading of *Cel-Tech* is the more accurate one. In *Cel-Tech*, the California Supreme Court held that "courts may not use the unfair competition law to condemn actions the Legislature permits." *See* 20 Cal. 4th at 184. "Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair." *Id.* Thus, Flywheel is not barred from recovery under the UCL just because it does not currently meet the standards for a claim under the Cartwright Act. *Chavez*, on which CMT relies, is inapplicable here because that case was brought by a consumer and involved a finding that the alleged unfair conduct was permissible under the law. *See* 93 Cal. App. 4th at 375. *Cel-Tech* governs in cases such as this one, "involv[ing] an action by a competitor alleging anticompetitive practices." *See Cel-Tech*, 20 Cal. 4th at 186-87 n.12. Thus, Flywheel's UCL claim may stand if the challenged conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *See id.* at 187.

Nevertheless, despite Flywheel's correct statement of the law, the allegations stated in its counterclaim are not enough to meet the Rule 12(b)(6) pleading standard. *See Twombly*, 550 U.S. at 555, 570. In contending that CMT's conduct threatened or harmed competition, Flywheel's counterclaim draws broad conclusions, such as, "CMT's conduct is unfair and unlawful because it seeks to unfairly and unlawfully restrain competition." *See* Counterclaim ¶ 17. Without further specificity, Flywheel's conclusory allegations cannot be taken as true. *See Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1, 6-7 (1975); *In re Gilead*, 536 F.3d at

1055. Nor does Flywheel allege that it "lost money or property as a result of the unfair competition." *See* Cal. Bus. Prof. Code § 17204. Flywheel alleges that CMT "is now attempting to develop its own competitive mobile taxi hailing application," but CMT apparently has not done so yet. *See* Counterclaim ¶ 7. The counterclaim does not plausibly allege that CMT's challenged conduct has cost Flywheel money or property. Accordingly, the Court GRANTS CMT's motion to dismiss the second counterclaim, with leave to amend.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS CMT's motion to dismiss Flywheel's first and second counterclaims, with leave to amend. Flywheel must file any amended pleading **no later than October 19, 2016.**

**IT IS SO ORDERED**.

Dated: October 5, 2016

_____
SUSAN ILLSTON
United States District Judge